We will now move to Appeal 23-2355, Tamara Frazier v. Equifax Information Services, LLC, and Mr. Zemel will begin with oral argument from you. May it please the Court, my name is Daniel Zemel. I represent Tamara Frazier, a plaintiff appellant. A credit report is inaccurate under the Fair Credit Reporting Act. If it's either patently inaccurate or misleading in such a way that it has the ability to adversely affect lending decisions. In this case, Ms. Frazier's credit report was patently inaccurate. First I'd like to go through how to read the credit reported issue. On page 10 of the appellant's moving brief, there's an image of the trade line and the credit reported issue. It has three columns, 30, 60, and 90 plus columns. What these columns represent is the specific month and year that a consumer is late on an outstanding obligation. The facts in this case are undisputed. Ms. Frazier had a short sale in January of 2016, and after that short sale there was no outstanding obligation. That's why this circuit addressing this trade line and this panel specifically held it would be accurate for the credit report to not report any lates after 2016, the short sale that occurred. Let me ask you this, Mr. Zenil. Much of the focus of the briefing seems to be on the credit link report and how that got into the tri-merged report. Obviously, Equifax is the defendant in this particular suit. There was another lawsuit that Ms. Frazier brought against credit link in the Northern District of Illinois. That suit was settled and dismissed. The allegations in that suit, though, don't appear to match what was going on here. Is that correct? The allegations in that suit are, yes, that's correct. A part of that suit was the inaccuracy, but there were other statutory obligations like credit link didn't follow. So we sue them for those reasons. As I understand it from the filings in the credit link suit, it was an allegation that there should have been a reference to Equifax and there wasn't. The allegations in this suit are all the inaccuracies that Ms. Frazier says was present in the Equifax documents, correct? No, Your Honor. I don't know what you're referring to with that. Joint status report that was filed in the credit link report, the case number is 22 instructed plaintiff to dispute with another credit reporting agency, Equifax. Under the FCRA, credit link was to itself contact Equifax, provide plaintiff with a copy of her dispute rights, so credit link's conduct violates the FCRA. That was the gravamen of the allegations in the credit link case. Those are different than what we have here against Equifax, correct? Yes, certainly, Your Honor. Sorry for the confusion. Okay. Do we have, on page 10, I assume you're referring to, this is the credit link report, correct? Yes, Your Honor. Do we have in our record the Equifax to credit link communication? No, Your Honor. The only thing we have is the declaration from credit link that says they got it and it's everything Equifax gave us. There's no counter evidence. Right. Is there any significance to the bold on page 10 of your, in the source XPTUEF is in bold? Yes. EF is Equifax and it's emboldening it saying this is the information that came from Equifax or that's the key source. Consistent with the affidavit that you filed? Consistent with the affidavit, also consistent with the Equifax, with our consumer dispute responses to Ms. Fraser that have these exact dates as showing late. There's no dispute that they, I mean, at least I think, there's no dispute that they provided these dates to credit link, just like DMI did with that code three. I guess the question that I have here is there's, if you look at the Equifax information, the Equifax information says that the loan was closed in January of 2016 and then they have that code three . . . Sorry, go ahead, Your Honor. They had that code three, which is the same thing we have in the DMI case. The code three closed in January 16th and we decided that nobody could have been misled. It was actually 90 days late on those dates, but it had been closed in January 16th. The problem that I see here is, of course, the credit links report does not state that it was closed. The Equifax report says that it was closed. So you're trying to hold Equifax responsible for credit links report to the bank, not showing that the loan was closed. Is that the gist of it? I think it's more than that, Your Honor. First of all, if Equifax didn't provide the date closed to credit link, that would be a problem and consistent with the evidence here, that's what credit link says. With regard to . . . Credit link said they didn't get the date closed from Equifax? Because there's a weird thing here, okay, in the background, which is we've got very sophisticated financial institutions involved and it seems extraordinarily weird to me that any of these financial institutions can say the last activity occurred in 2015, but she's still late on her mortgage payments in 2020. So, I mean, these banks, that's what I'm saying, you know, credit link says, oh, no, no, no, we didn't know the date it was closed because Equifax didn't provide it. I'm not sure that that's what credit links says. Credit link specifically says it did not make any changes to the information it received from Equifax in their declaration. Why not bring those allegations against credit link in the credit link case? In the credit link case, we addressed the error also. I think there was an obvious error. There were other components that you brought too, but Equifax . . . The complaint doesn't say that. The complaint in the credit link case even says credit link, left parenthesis, Equifax. It looked like the Equifax complaint hadn't been revised in the credit link case. I just don't understand why weren't the allegations against credit link brought in that action? I don't have that complaint before me, Your Honor, but this problem stems from Equifax and I want to address Judge Kirsch's point because it's a very important point. I think there's an error that Judge Kirsch is mentioning here. I want to explain it. The three in the Dovermuhl case is absolutely different than the three in this case. The three in the Dovermuhl case on page 18 of the reply brief is in the pay rate section of the report, not in the historical section. The historical section in the Dovermuhl case, it started with three in the request information, but in the response information, Dovermuhl put the dashes in, which the circuit meant no response, which means delete the threes in the historical payment grid. Equifax's case is different. We're saying the threes on these months, July 20, November 19, these are dates she was 90 days late. That's inaccurate. Everyone knows she wasn't late on these dates. This report must be patently inaccurate. The district court, they found that the report was accurate by focusing not on the issue of these historical inaccuracies, focusing on whether the credit report is currently delinquent or not. It did so by talking about BIBS. BIBS addressed a different issue. We attached it as Exhibit 12 to the motion for summary judgment. The BIBS trade line spoke about the pay status and the pay status alone, and that data field didn't have a date associated with that status, and it was therefore ambiguous whether it was currently delinquent or historically delinquent. In the history, in the payment history section, the payment history grid on the BIBS trade line, there is no claim of inaccurate reporting during specific months, and also the reporting of a specific month stops by the date closed. The same thing was addressed in DeGrosse case in Exhibit 13 of the motion for summary judgment. Again, it was a pay status issue, not inaccurate historical delinquencies. That's what we have here. There is no question Ms. Fraser wasn't late in 19 or 18, but this report specifically says she was. The report's also inaccurate under the misleading standard. Below, we presented evidence from the mortgage broker and from two expert witnesses that these recent lates have the ability to impact lending decisions, and in fact, in Ms. Fraser's case, it did impact the lending decision. And here's where we've got this issue about the loan officer initially saying one thing, the underwriter saying later on that, well, that it was her student loans issue. It wasn't the, it was the debt to income ratio. It was not the previous lates, correct? Yes. There are, yes, there are competing issues of fact in that, but our ex- I don't know if I agree with you on that. There's a statement by the loan officer that the loan officer and the underwriter later on say, no, that wasn't really what was the issue. I thought this was addressed by the difference between automatic and manual underwriting. That's correct. There's a, she lost 7% of a ratio because of this. Although you indicated in your, I think your reply brief that her ratio was above what it would have been for mandatory underwriting, and the underwriter talked about the fact that the, that would have been affected, that ratio would have been affected here. We would have had to get to mandatory underwriting. A mortgage broker's job is people come to a mortgage, they have to work the process, do this, do that, pay this debt as part of the closing, and we're going to get you that loan. That's standard procedure, and our expert says the issue here was $1,000, I think $1,200. That would not stop Ms. Fraser from purchasing a home. The 7% is significant, a $15,000 difference, that's something that would stop a loan. We have expert opinion on that, and so the damages component of this case has question of fact. But with regard to accuracy, whether it's the income issue or the lates, it's misleading because it has the ability to impact the lending decisions. We're going to grant you some rebuttal time, unless you have a question. Thank you, Mr. Kazemel. Mr. Conover will now move to you for an argument on behalf of the Denver Appley Equifax Information Services LLC. I just want to make two points in response to the colloquy that you had with my friend on the other side here. First, there are two claims at issue here, and under the Section 1681I claim that Ms. Fraser brought, that claim is focused on the accuracy of Equifax's credit file. For that particular claim, the court needs to look at what was actually in Equifax's credit file, which was provided to Ms. Fraser in the consumer disclosure that Equifax provided her. So for that claim, the basis for that is going to be the Equifax report itself. And for all the reasons we listed in the brief, and I'm happy to go through them here if the court has questions about it, we don't think that there is any triable issue as to the accuracy of the Equifax report itself. Now, as to the second claim, the Section 1681E claim that Ms. Fraser brought, that concerns whether Equifax provided to a third party a credit report that was inaccurate. And here we get into the problem that we don't have in the record the report that Equifax provided. Instead, Ms. Fraser is trying to infer what Equifax provided based on what Credit Link ultimately ended up reporting. And we don't think as a matter of law that that's appropriate in this case. Why is it? Let me ask you. You say the only evidence in your brief, the only evidence of what Equifax would have actually reported to third parties comes from the disclosures that Ms. Fraser, which reflected Equifax's file in her account. What about the Bodner affidavit? So, thank you, Your Honor. So, the Bodner Declaration, and this is in a document, a district court document, 113-1. I'm looking at page 2, paragraph 4 of it. So, my friend on the other side did not actually quote what the Bodner Declaration says. This is what the Bodner Declaration says. It says, quote, without altering any of the information provided by the nationwide consumer reporting agencies, meaning Equifax and others, and then it goes on. So, what the Bodner Declaration speaks to is whether the specific numbers were changed. And we don't dispute that the numbers are the same. If you look at the Equifax consumer disclosure and what was in its credit file, those are the same numbers that ultimately appear in the Credit Link report. The issue, and this is something that the Bodner Declaration doesn't speak to at all, is whether Credit Link ended up reporting all of the same information that was in, that was reported to it by Equifax. And this goes back to Judge Kirsch's question about there seemed to be discrepancies here. Equifax included in its credit report the date the account closed. Equifax also included the date of the last payment in September of 2015. Equifax included... I understand your position is nobody could have been confused by this. But apparently, ultimately, the mortgage company, Mutual Federal, was confused by it and understood it the way so as to prevent plaintiff from getting the mortgage. What I'm trying to understand, was there a discovery request to you all in this case that would have included the communication that you had to Credit Link? So, two things, Your Honor. One is that just as a matter of practice, Equifax does not keep records of the particular reports it ends up sending to third parties. Not available? As far as I'm aware, no. So the best evidence available is what Bodner tells us here. Right. So it seems as if Credit Link might actually have a copy of that because they can know that they did not change any of the information. But you all didn't, you didn't get it? They didn't... Your Honor, that's not our burden. It's Ms. Fraser's burden to raise a tribal issue here. This is the evidence we have. But that is the evidence. But also, I don't think that the record is as you stated. So the uncontroverted record here is actually that the bank was not misled by the Credit Link report that it received. This is coming directly, this is supplemental appendix page 30. This is the Holmes declaration where the loan officer himself testified that according to the disclosure, quote, Fraser settled her account for less than full balance in or around October of 2015. And he goes on to explain why that's the case. It's because the Credit Link report that Mutual Federal Bank reviewed also included the date of last activity. It also said that the account was paid for less than full balance and that the current amount was actually $0. If there were any question about this, and there isn't, but if there were, Fraser's own purported expert, Mr. King, also expressed his understanding that he did not think that the bank was misled in this situation. His deposition testimony was that Oakleaf, meaning the bank here, quote, did understand the situation. And if you'd like to consult the record here, that's district court document 86-18 at deposition page 97, lines 14 through 18. So the uncontroverted record is that the people who actually ended up reviewing the Credit Link report were not misled by it. And this even goes to the opinion of Mr. King himself. His opinion was not that this report affirmatively misleads anybody and gives the misleading impression that Ms. Fraser was either delinquent or made late payments years after the account was closed. It's instead that, well, it gives rise to two different interpretations, so we don't really know what would have happened here. But if a reasonable reader reading a report couldn't decide what the proper interpretation is, that doesn't mean they're misled. It just means they don't know. Is there any doubt that the Equifax report to Credit Link showed 90-day delinquent payments for three dates within 12 months of the time she applied for the mortgage? There is absolutely doubt in that. Okay. If you look at how Equifax recorded this information in its file, and this is, again, going back to the special appendix, page 6, which is just the Equifax… I'm sorry, page 7. Sorry. Yes. Page 6. Special appendix, page 6. If you look at… This is the consumer disclosure form in Equifax's files. The way that they recorded the account status with a status code of 3, that indicates that on each of those dates, the account was 90 to 119 days past due. I mean, that's what the status code means. What Equifax meant by that was that it was essentially repopulating the current account status. What do you mean, that's what we meant? So as you may recall from the Dove & Mule case, when Dove & Mule was filling in its grid and was putting dashes for certain boxes, it was basically creating a current status and putting a dash, and whatever Dove & Mule meant by that, that's an invalid reporting code. And the record is… That's the Willis testimony. Correct. And so if you look at the Willis testimony, what Equifax does in those situations is then it populates it with the current account status. And that's the source of the problem here, right? That is the source of the problem, Your Honor, but that doesn't mean that the Equifax report itself was misleading. It means… It simply means that given all the contextual information, including that the account was closed in January 2016, the date of the last payment was in September 2015, and that the account was paid for less than full balance, somebody reading this would understand it to mean that that was essentially what the status of the account was when it was closed. Let me try again from a different angle. Did… I'm troubled here. Do you think we made a mistake by letting Dove & Mule off the hook? I don't think that… I think that… Because what? Ultimately, the concern here is the credit link report, right? And so Congress would make credit link liable for any inaccuracies in that report. Ms. Fraser simply has not shown that what Equifax… Well, Bodner says we're reporting what we got from Equifax. Bodner says that they did not alter the information… And that's… It is patently false in saying that she was 90 days late on those seven months, including months within the year look-back period, from the mortgage application, right? So, Your Honor, if I may try again to answer your earlier question about why the Equifax report itself cannot possibly mean what you just said, if you look at it, you would expect to see different delinquency codes reported on each of those dates. It's saying, for instance, on October 2019, that the account was purportedly 90 to 119 days past due. Thirty days later, or 31 days later in November, there should be a different status code for 120 to 149 days. There isn't. It's the same status code. Well, who knows what happened, right? There are many things that could have happened. Partial payments, intervening payments, who knows? I mean, this is the kind of situation this Act was designed to protect people from. Your Honor, we understand that this may not have been as clear as… That's putting it mildly. Yes. But the question is ultimately whether a reasonable reader would be misled into thinking that her account was delinquent. And they would not be, because they would see that these codes can't mean actual delinquency dates, because if they would, different status codes would be used. So what you're saying is that somebody paying close attention with a lot of experience in the business would have understood this must be wrong, right? May I, Your Honor? Please. Yes, and the reasonable reader… That sounds like patently false and inaccurate. With respect, Your Honor, no, because the status codes themselves cannot actually… You would expect to see additional dates of delinquencies or you would expect to see different status codes actually used if in fact they meant actual dates of delinquency. So it must be wrong. What am I missing here? No, it means that the interpretation that Ms. Fraser is trying to assign to it is not an interpretation that a reasonable reader would take. What's the better interpretation? The better interpretation is that this account history reflects the account history and that at the time the account was closed, it was 9219 days past due, which is undisputed. Okay, then why doesn't it report 90 days late for every month after 2015? So again, the reason this particular issue came up is because every single time that Ms. Fraser requested an investigation into these codes, Equifax would go back to Dove and Mule and say, hey, what's going on here? Dove and Mule would provide an updated report that included a new status for that particular month and the status ended up having those dashes. Equifax's system says that's an invalid code, so we'll replace the dashes with the current account status. Current account status is not misleading information, it's just the current account status. But it's understood as saying she's 90 days late on those payments, those months. For a closed account, it indicates that the account was 9219 days past due. I have yet to see a theory on which this is not inaccurate, but I think I understand your point, but maybe not. Mr. Conover, is it a fair summary? Credit Link said they did not change Equifax's info. That doesn't mean Credit Link included everything Equifax sent Credit Link. Correct, Your Honor. Yes. All right. Thanks very much, Mr. Conover. You've gone over your time. We're going to give the same time to Mr. Zemel. Mr. Zemel will give you three minutes for rebuttal. Thank you, judges. What Equifax is arguing here is the misleading standard. We're not even at that point. We want to start with patent inaccuracy. The information's patently inaccurate. The holistic approach of looking at dates closed, that's not necessarily the standard. It's also misleading, but it's patently inaccurate. That's exactly what Mr. King, our expert, focused on, and he did it in the context of the HUD guidelines. The HUD guidelines say if there is a late within 12 days, within 12 months of the mortgage application, they can't get a loan, and that's exactly what this credit report says. So it certainly has the ability to mislead, which is all that's required under the Act for accuracy. With regard to whether Equifax presented information to CreditLink, we have the best evidence here. The best evidence is the declaration from Bodna. Equifax hasn't rebutted that evidence. If they've done so, they've done it only through argument of counsel, not through evidence. On summary judgment, the facts need to be taken in our favor, and on the record, that information came from Equifax, and Equifax's own documents show they reported Ms. Fraser as late during specific months of the month and year as of 1920 and 2018. I also want to talk about Dovenmule for a moment. Dovenmule, this circuit held, fixed the status codes. When they broke the dash, they removed the 3s to be no reporting, to then remove this exact type of reporting, which is 90 days late in specific months. Equifax didn't do that right. They didn't remove those codes. Those codes remained, and there's no question this credit report, whether it's the consumer response to Ms. Fraser or the report that CreditLink published to Ms. Fraser's creditors, that report says she was late in 2018, 2019, and 2020. A reseller gets credit reports from the sources and resells those reports to the lender. That's what a reseller means. And to impose liability on resellers, it will change the statute to impose the accuracy requirement on them instead of to the CRAs. For those reasons, I think the lower courts should be reversed. Thank you for your time. Thank you, Mr. Zemel. Thank you, Mr. Conover, the case will be taken under advisement.